J. C. STIMPSON AND S. M. FIELD *v.* A. W. PUTNAM AND MAR
THA P. PUTNAM.*

[IN CHANCERY.]

*Contempt.　Injunction.　Mortgage.*

A writ of injunction issued to restrain the defendants from removing certain machinery
which was in their possession, *held,* that they would be guilty of a contempt if they
stood by and quietly suffered it to be removed, even though they did not themselves
actively participate in the removal.

The fact, if true, that an injunction was improperly granted, is a reason for its dissolution;
but until dissolved it must be obeyed, no matter how unreasonable in its terms or
unjust in its operation. The injunction in this case *held* to have been properly granted,.
and no fact is established which would warrant its dissolution, and much less absolve
the defendants from liability for disobeying it.

This injunction upon the removal of the machinery was granted upon the statement
that it was covered by the terms of a certain mortgage. It turned out that, although
both parties meant to have the mortgage cover this machinery, and supposed it did
the language of the description was such as not to include it. *Held,* that equity
will treat that as having been done which ought to have been done, and the case
upon the proceeding for contempt will be disposed of as it would be if no mistake
had occurred in writing the mortgage.

The object of the proceeding for contempt is twofold: first, to punish the guilty party;
secondly, to compel restitution to the party injured.

In this case, the court finding that the violation of the injunction was willful, and done.
secretly and corruptly, and the orators' decree of foreclosure upon the mortgage having
become absolute, and it being very clear and manifest that the mortgage was in-
tended and understood by the parties to cover the machinery which the defendants
removed in violation of the injunction, the court *held* that the orators were entitled
to summary relief in this proceeding, without waiting for proceedings to reform the
mortgage, or the decree upon it, and accordingly gave the orators a final decree for
the value of the machinery removed.

PETITION IN CHANCERY. The petition set forth that A. W.,
Putnam and O. H. Saunders executed two mortgage deeds of cer-
tain land in Newport in the county of Orleans, one on the 29th
day of March, 1864, running to the complainant Field, to secure
an indebtedness of $857.50 to said Field, and one on the 1st day
of November, 1864, running to the complainant Stimpson, to se-
cure an indebtedness of $3200 to said Stimpson; that, said Put-
nam and Saunders having failed and neglected to pay said sums,.
etc., the complainants respectively obtained decrees of fore-
closure upon said mortgages, at the June term, 1866, of the

* Reported by request of counsel.　　　　　　　　　　REPORTER..

county court; that, after the execution of said mortgage deeds to the complainants, said Saunders quitclaimed all his right, title and interest in and to said premises to said Putnam; that, after the execution of said quitclaim deed, said Putnam conveyed said land and premises to Martha P. Putnam; that said real estate consisted of a piece of land of about one acre, and a limekiln, wharf and machinery, situated on said land; that on the 22d day of November, 1866, said A. W. and Martha P. Putnam and divers other persons commenced taking down said limekiln; that said complainants, having reason to believe that said A. W. and Martha P. Putnam intended to take down said limekiln and remove the same, together with the machinery thereon situated, on the 23d of November, 1866, upon petition to the court of chancery verified upon oath, and filing a good and sufficient bond in the sum of $1000, obtained an injunction on said A. W. and Martha P. Putnam, their servants, agents and workmen, restraining them from removing or tearing down the buildings, limekiln or machinery set forth and described in said petition, or any part or portion thereof, or committing any waste thereon, until the payment into court of the balance due the complainants by virtue of their respective decrees of foreclosure, or until the further order of court modifying or dissolving said injunction; that on the 3d day of December, 1866, service of said petition, or bill of complaint, and injunction, was duly made on said A. W. Putnam, and said bill was duly returned at the December term, 1866, of the court of chancery, and entered upon the docket of said court, and on motion of the defendants' attorneys, the following order was made, to wit:

" Continued for notice to Martha P. Putnam by publication in the Express. Motion to dissolve injunction filed. On motion of the defendants, the injunction heretofore granted is so far modified as to allow the defendants to make any necessary, proper or needful repairs upon the premises.

"By consent of parties, Nathan C. Page is appointed receiver, so far as relates to the steam-engine, to dispose of it at such price as he deems reasonable, or for the best interest of the parties, with a view to the avails' being paid over to one or both of the orators, to apply on the decrees mentioned in the orators' bill, or the decree rendered at this term in favor of Field against the defendants;

to be paid by the receiver when, on motion, he shall hereafter be ordered by the chancellor."

June term, 1867, continued.

The petition further alleged that A. W. Putnam had been in full possession of said premises from the date of said mortgage to the 17th day of July, 1867; that he had disobeyed said injunction in the following particulars, to wit: he had taken down the engine and boiler mentioned in the original mortgage, also all the shafting and other machinery connected with said limekiln, and had taken the same away from said premises, and had taken out, or caused to be taken out, the inside of said limekiln; that said limekiln was a patent limekiln, and the right to build and use the same cost a large amount of money; that the inside of said limekiln was built mostly of fire-bricks, and that said fire-bricks are very much more expensive than common bricks; that said A. W. Putnam had sold or taken away the same, and had disobeyed said injunction in every particular.

The petition further alleged that the machinery and property taken from said premises, lessened the value of the same to the amount of forty-five hundred dollars; that all of said waste was committed without the knowledge or consent of the complainants, and since the issuing and service of said writ of injunction; that they never had any knowledge of said machinery or limekiln being meddled with after the granting of said injunction, until the 16th day of July, 1867; that said engine was taken down and disposed of without the knowledge or consent of said Nathan C. Page.

### PRAYER.

" Wherefore your complainants pray that your honor will, in consideration of the breach of said injunction, issue a writ of attachment against said defendants, and order that said defendants stand committed to the common jail at Irasburgh in and for said county of Orleans, until he or they pay to your complainants the amount of damages they have sustained in consequence of the taking down of said limekiln and machinery, and the removing of the same, together with all the cost and expenses of your complainants in procuring said application and writ of attachment, together with such fine as to your honor shall seem meet."

The complainants further alleged "that they have good reason to believe, and do believe, that the defendant A. W. Putnam is about to abscond and remove from this state, in which case your complainants would be entirely remediless in the premises; wherefore your complainants pray that your honor will issue an *ex parte* writ against said A. W. Putnam, under such order and upon such terms as to your honor shall seem meet."

The petition was duly signed and sworn to.

Upon the presentation of the complaint and affidavits in support thereof, the chancellor issued the following warrant for the arrest of the defendant.

STATE OF VERMONT, ⎱ *To any sheriff or constable in the state,*
CALEDONIA COUNTY, *ss.* ⎰                            GREETING :

The foregoing prayer and complaint on oath, and proofs and affidavits hereto attached in support thereof, having been exhibited to me, therefore, by the authority of the state of Vermont you are hereby commanded to deliver to said Alfred W. Putnam true and attested copies of said prayer, complaint, proofs and affidavits, and of this precept, and to attach the body of said Alfred W. Putnam, and him safely keep so you have him to appear as soon as may be before the subscribing authority at the court-house in St. Johnsbury in the county of Caledonia, then and there to answer for the contempt in said complaint alleged, and to show cause, if any he have, against the same, and to abide such further order and decree as then and there may be made by the chancellor in the premises.

Hereof fail not, but make due service and return.

Given under my hand, at St. Johnsbury in the county of Caledonia, this first day of August, A. D. 1867.

BENJ. H. STEELE, Chancellor.

The warrant having been duly served, and the prisoner brought before the chancellor, August 6, 1867, the proceedings were had indicated in the following papers.

J. C. STIMPSON AND S. M. FIELD *v.* ⎱ IN CHANCERY,
A. W. PUTNAM AND MARTHA P. PUTNAM. ⎰ ORLEANS COUNTY.

STATE OF VERMONT, ⎱   On a preliminary hearing of the
CALEDONIA COUNTY, *ss.* ⎰ matters alleged in the foregoing petition, motion and complaint of S. M. Field and J. C. Stimpson against A. W. Putnam, alleging that said A. W. Putnam has been guilty of a contempt of court, in that he has broken the com-

mands of an injunction allowed in a cause in favor of said Field and Stimpson as orators, against said Putnam and Martha P. Putnam as defendants, which cause was entered in the chancery docket of Orleans county at the December term, 1866, both parties appeared, and the defendant prayed that a delay might be given him to take evidence in answer to the evidence against him now produced, and further prayed that, pending the proceedings, he may be allowed to go at large, upon filing with the court a bond in favor of the orators to abide all orders of court in the premises.   Now, therefore, to the end that all parties may be fully and fairly heard, it is ordered that the foregoing complaint, and all affidavits hitherto taken by the complainants, be filed with the clerk of the court of chancery in said county, within ten days from this date ; that the defendant have sixty days from this date to take and file testimony on his behalf, and that the plaintiffs have thirty days thereafter to take and file rebutting testimony.   All evidence after this date to be taken on reasonable notice, and in accordance with the usual rules for taking testimony in chancery. It is further ordered that, pending these proceedings, the defendant be confined in jail at Irasburgh in said county, unless he shall file, or cause to be filed, with the clerk of the court of chancery in said county, a good and sufficient bond in the sum of three thousand dollars, with surety or sureties to the approval of the clerk, to and in favor of said Field and Stimpson, conditioned that he then and there appear before the chancellor, and abide all orders and decrees, and pay all fines and damages, costs or terms, which may then be imposed upon him by the chancellor, and that a writ issue to that effect.

Given under my hand, at St. Johnsbury in the county of Caledonia, this 6th day of August, A. D. 1867.

BENJ. H. STEELE, Chancellor.

Testimony out of the state is to be taken before any Vermont commissioner, on eight days' notice of time and place of taking.

BENJ. H. STEELE, Chancellor.

The chancellor at the same time issued the following warrant.

STATE OF VERMONT, } *To any sheriff or constable in the state,*
CALEDONIA COUNTY, ss.  }                    GREETING :

By the authority of the state of Vermont you are hereby commanded to attach the body of Alfred W. Putnam, and him safely keep by committing him to the jail at Irasburgh in the county of Orleans, to the jailer therein, who is ordered to receive him and hold him, so you have him to appear before the chancellor at the next term of the court of chancery at Irasburgh in the county of

Orleans, on the fourth Tuesday of December, A. D. 1867, then and there to answer to the complaint aforesaid of S. M. Field and J. C. Stimpson for an alleged contempt, and to abide the order of court therein. Provided, nevertheless, that, at any time before the next term aforesaid, the said A. W. Putnam may be released from confinement by order from the clerk of the court of chancery in said county, on filing with the clerk of said court a good and sufficient bond, with surety or sureties, to and in favor of said complainants, in the sum of three thousand dollars, conditioned that the defendant then and there appear in said court of chancery and before any chancellor then and there present, and continue to appear from day to day and from term to term until the matters of the complaint be finally disposed of, and stand to and abide by all orders, and pay all fines, damages or costs, made or imposed in the premises.

Hereof fail not, but make due service and return.

Given under my hand, at St. Johnsbury in the county of Caledonia, this 6th day of August, A. D. 1867.

BENJ. H. STEELE, Chancellor.

The cause was finally heard on the 18th of February, 1868, and held for advisement until the 7th of April, 1868, when the opinion of the chancellor was announced, and the following final decree and warrant issued.

J. C. STIMPSON ET AL. v. } Court of Chancery, Orleans County,
A. W. PUTNAM ET AL. } December Term, 1867.

This cause having been fully heard, so far as the complaint for contempt is concerned, upon the proofs, allegations of the parties, and the argument of their respective solicitors, and having been duly considered by the court, it is adjudged that said Alfred W. Putnam has been guilty of a contempt in manner and form as alleged in the complaint, in that he did willfully violate said order of injunction in said complaint referred to, by selling and removing, or causing to be removed, into the province or dominion of Canada and beyond the reach of the process of this court, a certain steam-engine, and elevator and other machinery attached and connected therewith, included within the terms of said injunction, and did commit other waste upon the masonry of said limekiln, as the orators have complained against him; and it is considered that the damage to the orators by the defendant's said unlawful act is the sum of eleven hundred and seventy dollars ($1170), and said Alfred W. Putnam is hereby ordered and decreed to pay forthwith to the clerk of the court of chancery in the county of Orleans, for the orators, said sum of eleven hundred

and seventy dollars, with the costs of this proceeding, to be taxed by the clerk, and also to pay to said clerk, for the treasury of the state of Vermont, the sum of fifty dollars, as a further fine on this behalf; and it is further ordered and decreed that said Alfred W. Putnam, in default of immediate and full payment of said several sums of money, be committed to prison in the common jail at Irasburgh in said Orleans county, and be therein confined until said several sums, with interest thereon from this day, together with cost of commitment and confinement in jail, shall be fully paid.

Done in court this 7th day of April, A. D. 1868.

BENJ. H. STEELE, Chancellor.

STATE OF VERMONT, ⎱ *To any sheriff or constable in the state,*
ORLEANS COUNTY, *ss.* ⎰                                     GREETING :

By the authority of the state of Vermont you are hereby commanded to attach the body of Alfred W. Putnam, of Newport in said county, and, unless he shall forthwith pay, or cause to be paid, the several sums of money in the foregoing decree of the court of chancery ordered to be paid, the said Alfred W. Putnam having been adjudged guilty of a contempt as is therein set forth, you will proceed and commit the said Putnam to prison in the common jail in Irasburgh in said Orleans county, and you will lodge with the keeper of said prison a true and attested copy of this precept and of the foregoing decree ; and the ·keeper of said prison is commanded to receive the said Putnam within said prison, and to keep and hold him a prisoner within said prison until he shall pay said several sums, interest and cost, as in said decree required.

Given under my hand, at Newport in the county of Orleans, this 7th day of April, A. D. 1868.

BENJ. H. STEELE, Chancellor.

*James T. Allen*, *Walter D. Crane*, and *Dale & Robinson*, for the orators.

*L. H. Bisbee* and *Edwards & Dickerman*, for the defendants.

At the December term, 1867, of the court of chancery in Orleans county, STEELE, Chancellor, delivered the following opinion.

The original bill in this cause was brought to obtain the injunction of the court of chancery to restrain the defendants from committing any waste upon a certain limekiln and machinery

appurtenant thereto, which, it was alleged, were embraced in mortgages which the orators were foreclosing. On the 23d day of November, 1866, a writ of injunction was granted in accordance with the prayer, and on the 24th it was served upon the defendant Alfred W. Putnam. Since this time the decrees of foreclosure upon the orators' mortgages have become absolute, the orator Stimpson himself paying the mortgage of the orator Field, which was prior to his mortgage, and now holding an absolute title in himself of the mortgaged property. On the first day of August, 1867, a motion was filed with the court for an attachment for contempt to be issued against the defendant A. W. Putnam, upon the ground that he had violated the injunction by selling and removing a steam-engine, elevator and some other machinery covered by the injunction, and by removing and destroying some of the masonry of the limekiln. On the 1st of August a writ was issued upon which the defendant A. W. Putnam was arrested and brought before the court, and on the 6th of August such proceedings were had that he was released upon proper bonds, and orders were made as to the taking and filing of testimony relative to the alleged contempt. At the December term of court the cause came on for hearing, but, the defendant desiring to take some other testimony, the cause was marked " with the chancellor," to be heard when this testimony should be taken. On the 18th of February the cause was heard, and has since been held for advisement.

I. No question is made or can be made but the terms of the injunction were broad enough to cover the steam-engine, elevator, and machinery attached, and no question is made by the defendant A. W. Putnam but they were sold and removed out of the jurisdiction of this court into Canada, with his knowledge and without any objection on his part. So much he admits, and this would be enough to constitute a violation of the order of injunction. The property was in his charge and keeping, and, if he stood by and quietly suffered this waste to be committed, he could not justify himself upon the ground that he did not actively participate in the removal. Nor is there any ground to believe that he did not understand the injunction to cover this property ; for it ap-

pears upon the docket of the December term, 1866, that, on the defendant's motion, the injunction was modified to permit him to enter and make repairs, and, by consent of parties, a receiver was appointed (who, however, never accepted the trust) to sell this engine for the benefit of the mortgagees. It is quite beyond question, that the engine was at that period treated by the parties as covered by the injunction, and as included in the mortgage.

But the case does not stand upon the fact, which the defendant admits, that he suffered this property to be removed. He testifies, " I had nothing to do with the removing of it or taking it away whatever." This statement, we are sorry to say, is conclusively shown to be untrue. This defendant had deeded the property to his sister, Mrs. Martha Goodell, and a letter from the defendant to her, dated February 14, 1867, the authenticity of which is not questioned, reveals the fact that the defendant planned the entire enterprise ; and with the other correspondence and her testimony, it becomes evident that he not only planned but executed it, and that whatever aid he procured from his sister was procured by deception. It is entirely clear that Mr. Putnam understood the force of this injunction, that in violation of it he made the bargain and every arrangement for the sale and removal of the engine, elevator, and machinery attached, and that this was done secretly in the night-time, and that the property is now in Canada and beyond the reach of process from this court, and that he, and no other person, is the guilty party, and the only party who expected to reap any pecuniary advantage from this unwarrantable procedure.

The defendant is, therefore, guilty of a contempt, and is liable to punishment by fine or imprisonment, or both, in the discretion of the court of chancery, whose process he has disobeyed. So far as this liability is concerned, it would be no answer that the injunction was improperly granted. If improperly granted, the court would dissolve it, on motion and a proper showing of the facts ; but until dissolved a writ of injunction must be obeyed, no matter how unreasonable in its terms or unjust in its operation.

II.   This proceeding for contempt is instituted not only to punish the guilty party, but also, and perhaps chiefly, to cause resti-

tution to the party injured. The complainants in this case aver that, to be made whole, they are entitled to the value of the machinery removed, and to compensation for the other injury to the property which has come into their hands under the decrees of foreclosure. The defendant denies all injury other than the removal of the machinery, and, as to that, says that the machinery did not stand upon the premises mortgaged.

The mortgage deed from Putnam & Saunders to Stimpson, the orator, dated November 1, 1864, contains a somewhat intricate description of two pieces of land, and adds: " Also the buildings standing on the above described land, with all the machinery therein." This mortgage was given to secure the payment of $3200. It now turns out that the land as described, did not include the whole, and perhaps included no part, of the land upon which the machinery which was removed, was then standing. If this was all that appeared, it would show that the injunction was improperly granted, so far as this machinery is concerned, and that, however guilty the defendant may be in violating it, the *orator* would have suffered no wrong. But this is not all that appears. It appears by the testimony of Mr. Saunders, who was a partner with Mr. Putnam, and united with him in mortgaging the property to Stimpson, that the boiler, engine and elevator were then set up, and were intended and supposed by the parties to be embraced in the mortgage. It appears by the mortgage deed, that Saunders & Putnam mortgaged not only the limekiln property, but also a steam-tug, called the " Stars and Stripes." It is hardly to be supposed that they embraced this loose property, and intended to except a part of the very machinery by which the limekiln was to be run. It also appears from the testimony of Stimpson, that he so understood the mortgage, and that Saunders & Putnam pointed out the lines and boundaries in such a way as to include this machinery and the shed in which the engine was placed. This land was purchased by Putnam and by Saunders & Putnam of S. M. Field. The testimony of Mr. Field and Mr. Clough tends to show that the purchases made before the Stimpson mortgage, were understood by the parties to cover the ground upon which the engine stood.

All this testimony is entitled to additional force, from the fact that at the December term, 1866, the parties consented to treating this engine as property mentioned in the mortgage, and to be sold to apply toward its satisfaction, and made their entry upon the docket accordingly. Upon this question of the intention and understanding of the parties, the defendant offers no testimony which tends in any substantial respect to contradict the evidence on the part of the orators. We are satisfied that both parties intended this mortgage of Saunders & Putnam to Stimpson, to cover the engine, boiler and elevator, and that both parties, until quite recently, supposed it did, and that the deed ought to have been so written; and equity will treat that as having been done which should have been done. Suppose that the defendant Putnam, at the December term, 1866, instead of consenting to a sale upon the mortgage as he did, had moved that the injunction be dissolved, so far as the engine was concerned, and had alleged the facts in his motion, viz.: that by mistake the mortgage deed was so written as not to cover the land upon which the engine stood, but that he and Mr. Saunders intended to mortgage that machinery, and supposed they had. Would a court of chancery have dissolved the injunction? We think not. On the other hand, if the orators, when applying for the injunction, had stated that the shed in which the engine stood, was not covered by the mortgage, but that the omission was by mistake, the injunction would, nevertheless, have been granted. The injunction, therefore, instead of being granted improperly, was no more than was required to preserve the equitable rights of the orators. The defendant can stand no better in this proceeding, than he would upon a motion to dissolve, upon the same state of facts. So far as this proceeding is concerned, it is the duty of the court to treat this mortgage, and the decree upon it, precisely as the parties treated it and understood it and meant it; that is, as covering the machinery. There is no necessity, as the facts stand, that the orators should file any supplemental bill to enable them to hold in equity the value of this property which the defendant has detached from the freehold. If they desired, by a proceeding in equity, to perfect a record title at law to the freehold, they might then be

forced to original or supplemental proceedings to reform the deed and decree.

We have estimated the entire loss of the orators as follows, guided considerably by the testimony of the defendant on the subject: engine and boiler, $750; elevator, etc., $250; other injuries, $100; interest, $70; in all, $1170; and have concluded that the defendant A. W. Putnam should be held to that extent responsible to the orators to make them whole, and that he be decreed to pay that sum to the clerk for the benefit of the orators. We do not feel at liberty entirely to pass over the liability of the defendant to punishment, but, in consideration of the fact that he has failed in business and is comparatively without means, and that this whole enterprise carries with itself its own punishment, by the pecuniary loss he must suffer in complying with the decree we have made, and being entirely satisfied that he intended no actual contempt for the court or any of its officers, we have concluded to punish him with much less severity than the offense would seem to warrant, viz.: by a fine of $50.

The docket entry is, the said Alfred W. Putnam is adjudged guilty of a contempt, and ordered to pay to the clerk for the orators $1170 and costs of these proceedings, and interest from April 7, 1868, and also the sum of $50 as a fine, to be paid to the treasury of the state, and to be committed to jail until the said several sums are paid.

Decree and warrant issued accordingly.