On petitioner Smith's motion to show cause filed July 3, 1989, contempt proceeding dismissed April 22, 1992

Arlen Porter SMITH,
Albert R. Garcia, Jr.,
and Christus Bertolino,
*Petitioners,*

*v.*

STATE DEPARTMENT OF CORRECTIONS,
*Respondent.*

(CA A50482)

Arlen Porter SMITH,
*Plaintiff,*

*v.*

STATE DEPARTMENT OF CORRECTIONS
and Fred Pearce,
*Defendants.*

(CA A50483)

829 P2d 710

Arlen Porter Smith, Salem, *pro se*, for the motion.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Ann Kelley, Assistant Attorney General, Salem, *contra*.

Before Rossman, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

The primary issue is whether Department of Corrections, by the acts of its employees, committed one or more contempts of court by unlawfully interfering with petitioner's access to this court. These cases, consolidated only for the purpose of a contempt proceeding, began as petitions for judicial review of Corrections Department rules under ORS 183.400.[1] This contempt proceeding arose from the transfer of petitioner Smith (hereinafter "petitioner") to the Nevada State Prison (NSP), his subsequent transfer back to Oregon State Penitentiary (OSP) and the manner in which prison officials handled materials that petitioner had accumulated in connection with these and other cases. We dismiss the contempt motion.

Petitioner was transferred[2] to NSP on June 1, 1988, and returned to OSP in May, 1989. He filed the petitions in these cases while confined at NSP. In July, 1989, he filed a motion requesting us to issue an order to show cause why respondent should not be held in contempt of court for "unlawful interference with the process and proceedings of this court." In substance, he alleged that he had been deprived of his legal materials by Corrections Department staff when he was transported to NSP and back to OSP. We issued a show cause order in these cases only.[3]

After considering petitioner's motions and respondent's responses, we issued a second order requesting clarification of what Corrections Department considered to be "legal work" and how Corrections Department personnel

---

[1] The petitions were filed on December 1, 1988, by Smith and three other inmates. The petition in CA A60582 sought review of amendments to Corrections Department rules regulating inmate mail; the petition in A50483 sought judicial review of amendments to rules regarding use of the prison legal library.

[2] On June 1, 1988, at 11:00 p.m., without prior warning, petitioner was removed from his cell at OSP and transported to NSP with whatever clothes he had with him and without any of his personal effects or legal materials.

[3] Petitioner has filed motions seeking to have Department of Corrections found in contempt of court in a number of other cases (CA A48118, CA A48119, CA A48120 and CA A48121), which were pending at the time of his transfer. The motions and affidavits in those cases allege that petitioner was transferred to NSP for the purpose of obstructing his access to the court. We have held those motions in abeyance. Contemporaneously with the issuance of this opinion, we have issued orders to show cause in those cases.

made decisions as to what was and what was not legal work. After receipt of memoranda from the parties, we appointed a special master to conduct a hearing and inquire into petitioner's allegations. The order also made certain determinations: The constitutional and statutory rights of access to the courts include the right to possess documents relating to a case pending in a court, that legal materials an inmate may possess include legal research materials and documentary evidence, that a person commits a contempt of court if that person unlawfully interferes with the ability of a party to a proceeding in a court of law to possess legal materials and that a correctional facility may impose reasonable limits on an inmate's possession of legal materials, provided that there is an opportunity for meaningful review of a decision that particular materials are not legal materials that an inmate may possess. We reaffirm those determinations by this opinion.

In addition, the second order: (1) added Pearce, Director of Corrections Department, as a party to the contempt proceeding; (2) required petitioner to submit to the special master a list of occasions on which petitioner believed that legal materials were unlawfully taken from him, but provided that the list was not a limit on the special master's inquiry into the matter; and (3) authorized the special master to conduct such hearings as he deemed necessary, to inventory the materials over which there was a dispute, to determine whether the materials were legal materials that petitioner was entitled to possess and to prepare a report containing recommended written findings of fact and conclusions of law.

As directed, petitioner submitted a list of occasions on which he alleges that Corrections Department interfered with his access to the court. In substance, the list states four claims: (1) Prison officials deliberately refused to send petitioner his legal materials while he was incarcerated in NSP; (2) after petitioner's return to OSP, prison officials refused to allow him to take possession of materials sent from NSP that included legal materials from these and other cases pending before us; (3) in May, 1989, the Academic Programs Manager at OSP seized and destroyed legal materials belonging to petitioner which had been found in the OSP Law Library,

including materials relating to cases pending before us; and (4) on two occasions after his return from NSP, prison officials prevented petitioner from receiving mail from his family that included legal materials relating to cases pending before us.

The special master conducted hearings, heard the testimony of approximately 30 witnesses and received a number of affidavits and written stipulations of the parties, together with over 200 exhibits. After giving the parties the opportunity to submit written closing arguments, he prepared a written report. He reached three main conclusions: (1) Pearce did not commit any contempt of court; (2) petitioner was transferred to NSP for the purpose, at least in part, of denying him reasonable access to legal materials directly related to his pending cases in the Court of Appeals and to frustrate his access to the court in other ways, but he did not sustain any substantial or actual injury as a result of the transfer; (3) petitioner did not sustain his burden of proof with respect to the other three instances of alleged contempt.

After receipt of the special master's report, we requested that petitioner and respondent assume that the special master's determination concerning petitioner's transfer to NSP constituted a finding of contempt of court, and we posed three questions: (1) Even if Pearce is not liable for contempt, may Department of Corrections be liable for contempt? (2) Whether or not Pearce or Department of Corrections may be liable, may other employees of Department, whose actions are subjects of the special master's findings, be liable for contempt? (3) Assuming the validity of the special master's determination that petitioner suffered no harm by any interference with his access to the court, what effect does that have on liability for contempt? The parties were also invited to take issue with any aspect of the special master's report.

■ After the parties' responses, we reviewed the record before the master, giving due deference to his explicit or implied credibility findings. This is a criminal contempt proceeding; each of the acts alleged to constitute a contempt of court occurred in the past and cannot now be cured. Therefore, petitioner is required to prove the allegations "beyond a reasonable doubt." *Hicks v. Feiock*, 485 US 624, 108 S Ct

1423, 99 L Ed 2d 721 (1988); *Drevers and Drevers*, 308 Or 462, 781 P2d 343 (1989).[4]

■ Petitioner agrees that there is no evidence linking Pearce to any of the four instances of conduct alleged to constitute contempt of court, but he argues that Pearce may be held liable vicariously for the acts of other Corrections Department officials and employees. We are aware of no authority, and petitioner points to none, that supports that proposition under the circumstances of this case. Accordingly, the proceeding is dismissed as to Pearce.

■ Respondent argues that petitioner's transfer *to* NSP is not within the scope of this contempt proceeding, because that took place *before* he initiated these two cases. The gravamen of petitioner's claim is that the transfer obstructed his ability to pursue his legal remedies in these cases, which had not been filed at the time of the alleged obstruction. Without a showing that there has been unlawful interference with these cases, there cannot have been an obstruction. Petitioner has not shown anything about the transfer that adversely affected these cases. For the same reason, we will not consider the manner in which Corrections Department personnel handled the legal materials petitioner had stored in his cell at the time of his transfer to NSP. Also, we will not consider Corrections Department's handling of petitioner's legal materials stored in the OSP Law Library. It appears from the evidence that any interference with or deprivation of legal materials most likely took place in July or August 1988; these cases were not filed until December, 1988. Petitioner has not shown any adverse effect from those actions on these cases. Moreover, we are not persuaded by the evidence that prison officials prevented petitioner from receiving mail from his family that included legal materials relating to these cases.

■ The only remaining allegation of contempt that is within the scope of this proceeding is Corrections

---

[4] In 1991, the legislature repealed the existing contempt statutes and replaced them with a new statutory scheme. Or Laws 1991, ch 724. Many of the changes were designed to codify existing case law. To the extent that the bill changed existing law, the changes do not apply to this case, because the acts alleged to constitute contempt of court and the special master's hearings took place before the legislation became effective.

Department's handling of the legal materials that petitioner had accumulated during his stay at NSP before his return to OSP. The special master erroneously believed that petitioner was required to prove his allegations only by "clear and convincing evidence." By that standard, the special master found that petitioner had failed to prove his claim. We have prepared findings of fact on the basis of our review of the record. The parties will receive those findings with this decision. No useful purpose would be served by including them *verbatim* in this decision. Instead, we will summarize them, relating only to events after petitioner's return from NSP.

The issue is whether Corrections Department employees refused to allow petitioner to take possession of some materials that he had possessed at NSP. Corrections Department staff went through those materials page by page to determine what petitioner could keep and what he could not. They represented that the materials not given to petitioner had to be sent out of the institution by petitioner or they would be destroyed. Petitioner received some of the material, but he was *not* given substantial amounts of other material. At some point in the culling process, he became frustrated and elected to have all of the remaining, uninspected materials sent out of the institution. He has not proved that any of those materials included materials relating to these cases. Thus, he has failed to prove beyond a reasonable doubt that Corrections Department personnel intentionally interfered with his access to the court by preventing him from receiving legal materials to which he was entitled.

Contempt proceeding dismissed.