On respondent's renewed motion to dismiss filed July 1, on respondent's motion to dismiss CA A48119 filed October 29, on respondent's motion to dismiss CA A48121 filed November 2, 1993, and on Court of Appeals' order to show cause issued August 29, 1988; respondent's renewed motion to dismiss denied; respondent's motion to dismiss CA A48119 denied; respondent's motion to dismiss CA A48121 denied, and respondent is found to be in contempt of court and fined March 9, 1994

ARLEN PORTER SMITH,
Todd Dickenson, Kenneth D. McCormick,
Gilbert Lane, Philip McClure and Raymond Stelljes,
*Petitioners,*

*v.*

STATE DEPARTMENT OF CORRECTIONS,
*Respondent.*

(CA A48119 (Control))

ARLEN PORTER SMITH,
Kenneth McCormick, Philip McClure,
Todd Dickenson, Gilbert Lane and Raymond Stelljes,
*Petitioners,*

*v.*

STATE DEPARTMENT OF CORRECTIONS,
*Respondent.*

(CA A48120)

ARLEN PORTER SMITH,
Kenneth C. McCormick, Philip McClure,
Gilbert Lane and Raymond Stelljes,
*Petitioners,*

*v.*

STATE DEPARTMENT OF CORRECTIONS,
*Respondent.*

(CA A48121)

870 P2d 254

Arlen Porter Smith, *pro se*, for petitions.

Ann Kelley, Assistant Attorney General, for respondent.

Before Riggs, Presiding Judge, and De Muniz, Judge, and Buttler,* Senior Judge.

BUTTLER, S. J.

---

* Buttler, S. J., *vice* Durham, J.

## BUTTLER, S. J.

In these three cases, petitioners seek judicial review of three sets of administrative rules that had been adopted by the Department of Corrections. Smith is one of the petitioners in each of the cases and is the one who prepared the petitions. The records in the cases were filed on May 29, 1988; accordingly, petitioners' briefs became due 49 days later, on July 7, 1988.

On June 1, 1988, at 11 p.m., Smith was removed from his cell at OSP and transported to a Nevada correctional facility with the clothes that he had with him and without any of his personal effects or his legal materials. Several weeks later, some, but not all, of his legal materials were shipped to him in Nevada. The decision to transfer Smith was made during a break in a meeting of the Warden's Council, during which Maass, Superintendent of OSP, Peterson, Department of Corrections' Director of Institutions, and McAlister, Assistant Attorney General assigned to the Department of Corrections, conferred and made the decision. McAlister dictated to the counselor the exact language to be included in the record as the reason for Smith's transfer: his "frivolous lawsuits were taking too much of the staff's time."

In June, 1988, Smith, while confined in Nevada, filed a motion for an order to show cause why the Department should not be held in contempt of court "for deliberately obstructing the petitioners from fairly pleading and pursuing this action before this court and for taking punitive action against the petitioners for having sought redress before this court." While that motion and the Department's response were under advisement and Smith was confined in prison in Nevada, Smith and other OSP inmates still confined in OSP filed two other petitions for judicial review of Corrections Department administrative rules. Those petitions were assigned case numbers A50482 and A50483.

On May 15, 1989, Smith was returned to OSP without most of his legal materials. On May 25, 1989, Smith filed motions in A50482 and A50483, seeking to have the Department held in contempt of court for the manner in which his legal materials were handled on his return to OSP. While those motions were under advisement and after considering

the Department's response to Smith's motions in the cases now before us, we ordered that these cases, A48119, A48120 and A48121, be consolidated for the purpose of the contempt proceeding and that the Department show cause why it should not be held in contempt of court under *former* ORS 33.010(1)(h) and (i).[1]

On September 21, 1989, we consolidated A50482 and A50483 for the purpose of the contempt proceeding relating to them and ordered the Department to show cause why it should not be held in contempt of court. In January, 1990, Smith filed a motion to enjoin the Department from engaging in certain practices, with particular reference to his allegation that the OSP law librarian had destroyed certain legal documents that he had left in the library when he was transferred to Nevada.

Given the many factual allegations that needed to be resolved, we appointed a special master in A50482 and A50483 to conduct a hearing into the allegations. In that order, we also made these determinations: The constitutional and statutory right of access to the courts included the right to possess documents relating directly to a case pending in a court; "legal materials" an inmate may possess include legal research materials and documentary evidence; a person commits a contempt of court if that person "unlawfully interferes with the ability of a party to a proceeding in a court of law to possess 'legal materials';" and a correctional facility may impose reasonable limits on an inmate's possession of legal materials if there is an opportunity for meaningful review of a corrections officer's decision that particular materials are not legal materials that an inmate may possess. Following that order, the proceedings in these cases were held in abeyance pending disposition of A50482 and A50483.

Following extensive hearings, the special master entered findings of fact and conclusions of law. After receiving his report, we asked the parties to submit memoranda to the court with reference to several issues. After considering the memoranda, we issued an opinion on April 22, 1992. *Smith v. Dept. of Corrections*, 112 Or App 556, 829 P2d 710

---

[1] ORS 33.010, ORS 33.020 and ORS 33.040 were repealed by Oregon Laws 1991, chapter 724, section 32.

(1992). At the same time, we entered Findings of Fact in a separate document, which were specifically affirmed in our opinion. We agreed with the special master that the proceedings were for criminal contempt, requiring Smith to prove his allegations beyond a reasonable doubt. We found beyond a reasonable doubt, as had the special master, that the Department had transferred Smith to Nevada, at least in part, to interfere with his litigation then pending in this court. We also found beyond a reasonable doubt that, in August, 1988, the Academic Programs Manager at OSP seized, and later destroyed, legal materials belonging to Smith relating to cases pending in this court, which had been found in the OSP law library. However, in cases A50482 and A50483, we concluded that we could not reach the claim for contempt based on that conduct, because both of those cases had been filed after Smith's transfer to Nevada and destruction of Smith's legal materials in August, 1988, had no relation to those cases. *Smith v. Dept. of Corrections, supra.* Accordingly, we dismissed the contempt proceedings in those cases.

At the same time that we issued that decision, we issued an order in the cases now before us requiring the parties to show cause why these cases should not be reactivated and why the record made by the special master and the court in the contempt proceeding in A50482 and A50483 should not be applied in the contempt proceeding presently before us. Because no objection was made, on July 24, 1992, we ordered that the record in those cases be the record in these cases, and requested memoranda from the parties.

■ In the meantime, Smith had filed a civil action in the federal district court against several individuals employed by the Department of Corrections for damages under 42 USC § 1983. That case went to trial in December, 1992, and on December 8, 1992, the jury returned a verdict for the defendants. The Department filed a renewed motion to dismiss[2] these cases on the ground of issue preclusion, contending that the federal court judgment disposed of the same claims that Smith is asserting in these cases. We consider that motion first.

---

[2] The Department's original motion to dismiss was filed before judgment was entered in the federal court case. We denied that motion.

Assuming that there is an identity of issues in these cases and the federal court case, this court had made findings on those issues on April 22, 1992, long before the federal case went to trial, and affirmed them in *Smith v. Dept. of Corrections, supra.* We are not aware of any authority, and none has been cited, that would require this court to ignore its earlier findings and adopt the federal court findings.[3]

In any event, we are unable to determine from this record whether the issues in the federal court case were identical to those presented in these cases. Respondent has submitted to us only the special verdict entered in that case and the trial judge's decision on other claims that were decided on summary judgment following the verdict in the bifurcated trial. The verdict form listed five claims and asked the jury with respect to each claim whether the plaintiff prevailed. The answer was "no" to each claim. Only two of the claims appear to bear any resemblance to those before us. The third claim is stated this way in the verdict: "Plaintiff's third retaliation claim is against defendants Peterson, Maass, and/or Gassner alleging that they caused him to be transferred to Nevada." There is nothing in the verdict form, or any other document in the federal court action submitted to us, that tells us what Smith claimed as the reason for the claimed retaliation. It could have been any number of reasons other than to interfere with his pursuing court actions in this court.

The fourth interrogatory to the jury on which respondent apparently relies is stated this way: "Plaintiff's access to court claim is against defendants Keaton and/or Hande alleging that they took his legal material on or about June 30, 1988." That claim not only suggests that it was Smith's only claim relating to interfering with his access to the courts, it also fails to tell us which of the many court proceedings initiated by him were the basis for that claim. If, for example, his claim was that his access to the courts was adversely effected with respect to proceedings that he had commenced after June 30, 1988, we had held in our April 22, 1992, opinion that Smith had not shown any adverse effect

---

[3] If there is an issue preclusion question, Smith argues, the federal court erred in not accepting the Oregon court's findings on those issues. However, the defendants in the federal case are not parties to these cases and they had not had an opportunity to litigate those questions.

from the claimed action on proceedings filed about five months after that action took place.

We deny respondent's motion to dismiss on the ground of issue preclusion.

In October, 1993, respondent moved to dismiss A48119 on the ground that the judicial review proceeding was moot, because the Department had amended the challenged administrative rules. However, not all of the challenged rules have been amended and petitioner has timely filed a petition for judicial review of the amended rules (A81380), stating that when A48119 is reactivated for briefing on the merits, he will move to consolidate the two cases. We deny the motion to dismiss A48119.

■ In November, 1993, respondent moved to dismiss A48121 for mootness, because the challenged rules have been amended. As petitioner points out, not all of the challenged rules have been amended and that, as to the challenged rules that have not been amended, the petition is not moot. Smith has not petitioned for review of the amended rules. Accordingly, rules that have been amended are not subject to review, no matter how slight the amendment. However, because the petition challenges some rules that have not been amended, we deny the motion.

■ Finally, we proceed to the merits of the contempt proceedings. Respondent contends first that the motion to show cause filed on June 10, 1988, was insufficient to commence a contempt proceeding, because it failed to identify any order or other legal duty ignored by the Department. *Former* ORS 33.040 requires only that "the facts constituting the contempt must be shown by an affidavit presented to the court." Petitioner's affidavit alleges, in part:

"2. On the evening of June 1st, 1988, at or about 11:00 pm., agents acting on the behalf of the respondent seized my person and transported me without my permission to the State of Nevada where I am currently being held as a prisoner of the State of Oregon;

"3. My removal from my place of incarceration at the Oregon State Penitentiary was done in retaliation for my lawfully engaging in a variety of legal and political activities,

including this action and other actions pending before this court;

"4. In removing me from the State of Oregon the respondent has seized and physically separated me from my legal files and the records in this case. I have also been incarcerated in a facility which does not contain an adequate legal library or any 'Oregon' legal materials."

Respondent apparently contends that those allegations are insufficient because "the cited statute cannot prevent the Department from transferring any inmate." That, however, is not the issue. Petitioner contends, and we have previously found beyond a reasonable doubt, that he was transferred to Nevada correctional facilities for the purpose of interfering with his access to the Court of Appeals, at least in part. Coupled with that contention is petitioner's allegation that the Department seized and physically separated him from his legal files and the records in this case. We have found, beyond a reasonable doubt, that Hande, the Adult Basic Education Manager who substituted for the OSP Law Librarian in his absence, in August, 1988, was given a box containing legal material relating to Smith's pending Court of Appeals cases and that she either destroyed them at that time, or withheld them from Smith and destroyed them at some later time.

Respondent argues that, because this contempt was initiated on June 10, 1988, any action by the Department after that date cannot be considered to support a finding of contempt in this case, particularly as to Smith's contention that his legal materials were destroyed. Assuming that the destruction of his legal materials in August, 1988, may not be a separate contempt, it is evidence that supports his allegation that respondent seized and physically separated him from his legal files and records relating to this case. The destruction was the ultimate separation of petitioner from his records.

*Former* ORS 33.010(1)(i) provided:

"(1) The following acts or omissions, in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"* * * * *

"(i) Any other unlawful interference with the process or proceedings of a court."

We conclude that the facts alleged and proved constitute contempt under the quoted statute, and we find the Department in contempt.

■ Nevertheless, the Department argues that, even if there was a contempt, Smith suffered no prejudice as a result of his transfer to Nevada, because he sought and obtained extensions of time within which to file his briefs. Although that is true, these cases were held in abeyance pending the outcome of the special master proceedings, and A48118 was dismissed as moot in July, 1992, and some of the rules challenged in A48121 have been amended and are not subject to our review. If it had not been for his transfer to Nevada, those cases could have been decided before the rules were amended during the long delay. In the context of a challenge to administrative rules, that lengthy delay constitutes prejudice.

■ The Department contends that *former* ORS 33.010-(1)(i) was not so broad as to constrain decisions by it to transfer felons, particularly in the light of the wide latitude given it by the legislature. It goes on to argue that, if we should decide that the statute is broad enough to do so, the Department should be given fair warning before a finding of criminal contempt could be supportable. It contends that it is entitled to fair notice in order to make an informed decision. Those arguments ignore the fact that after the counselor was instructed to state for the file that Smith was to be transferred because his "frivolous lawsuits were taking too much of the staff's time," the official in charge had second thoughts and instructed the counselor to change the reason on the record. It is a fair inference that McAlister, an Assistant Attorney General, who provided the original reason for the transfer, realized that the Department could not lawfully transfer an inmate for the original stated reason. It might be true that he and the other state officials responsible for the transfer did not think in terms of contempt; however, it is reasonable to infer that they knew that what they were about to do was wrong and, for that reason, tried to correct the record. Applying the statute as we do should come as no surprise. The Department's argument is that, if we were to

find a contempt here, any inmate who had a case pending in the courts, no matter how frivolous, would be immune from an involuntary transfer. That is not so if there is a valid reason for the transfer; however, that the inmate has one or more lawsuits pending in the courts is not a valid reason. A similar argument was made and rejected in *Evans v. OSP*, 87 Or App 514, 743 P2d 168 (1987), with respect to OSP's violating this court's order staying a disciplinary order placing the plaintiff in disciplinary segregation by placing him in administrative segregation. We pointed out that, if there were reasons under the administrative rules to place the inmate in administrative segregation other than the acts which were the subject of the judicial review, there would be no contempt of court.

■        The Department relies on *State ex rel Oregon State Bar v. Wright*, 280 Or 713, 573 P2d 294 (1977), for the proposition that it must be shown beyond a reasonable doubt that it acted wilfully and with bad intent in order to find it in contempt. That proceeding was brought under *former* ORS 33.010(1)(e), which provides that "disobedience of any lawful judgment, order or process of the court" constitutes contempt of court. Wright was charged with violating a temporary restraining order. The court held that punishment for civil contempt should be restricted to cases in which the violation of a court order is wilful and with bad intent. This case does not involve the violation of a court order; it involves the violation of a statute and is not one for civil contempt. Clearly, Smith is required to establish beyond a reasonable doubt that the Department violated the statute. If it is necessary to show that the actions of the Department were wilful and with bad intent, we find that the decision to transfer Smith out of state for the reason originally stated on the record by the Director of Institutions for the Department of Corrections, the Superintendent of OSP and the Assistant Attorney General assigned to represent and advise the Corrections Department was made wilfully and with bad intent. Those persons were sufficiently high in the hierarchy of the Department to hold it liable for their actions. The same is true with respect to Hande's decision to destroy Smith's legal materials. A state agency can act only through its agents, and may be held accountable for the actions of those who have the responsibility to take the action in question.

■    Finally, the Department contends that if it is held to be in contempt, the maximum penalty that may be imposed is a fine of $100 under *former* ORS 33.020(1). That is so, unless "the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced" by the contemptuous conduct. Although Smith was prejudiced to some extent in that he was not able to pursue his rule challenges before the Department amended some of them, on this record we are not able to determine the extent of prejudice to justify a fine in excess of $100. Accordingly, we impose a fine of $100.

Respondent's renewed motion to dismiss denied; respondent's motion to dismiss CA A48119 denied; respondent's motion to dismiss CA A48121 denied; respondent is found to be in contempt of court under *former* ORS 33.010-(1)(i) and is hereby fined $100.