Argued and submitted February 6, reversed and remanded with instructions
July 3, 1996

In the Matter of the Marriage of

Alvin DAWSON,
*Appellant,*

*and*

Aleatha DAWSON,
*Respondent.*

(D8707-65121; CA A87767)

919 P2d 517

Christopher K. Dolan argued the cause for appellant. With him on the brief was Little & Associates.

Laura Graser waived appearance for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

Father appeals an order modifying his child support obligation. We reverse and remand.

The parties have one child, a daughter born June 1, 1987. The marriage was dissolved in January 1988, and father was required to pay $125 per month for child support. In 1994, the Multnomah County District Attorney's office moved to modify the support obligation because more than two years had passed since the entry of the original support order. ORS 25.287. After a hearing, the referee found that father's gross monthly income totaled $2,664. The referee applied this income to the support calculations and also included the cost of private schooling. Father's support obligation was raised to $516.

Father appealed to the circuit court, ORS 25.316(5), objecting to the finding of the amount of his income and to including private schooling as part of his support obligation. The trial court held that father's total monthly income was $2,402 but rejected father's contention that costs of private schooling should not be part of the support obligation. The court stated:

> "Well, this school issue is always kind of tricky. I tell you the way I've always approached it—frankly something that the parents decided jointly to do, then each parent has to bear their share of the cost. And [father] has frankly done that right along which is to his credit.

> "I think he just objects to the fact that it now becomes part of a court order. I don't know that I could make the finding that this child absolutely needs to be in private school, but what's happened now is [father] just doesn't want to pay for it anymore. And I'm sure that he now recognizes that $125 a month was piddly compared to what the cost of raising this child has been, so he wasn't paying anywhere near his share up to now."

The court entered an order of $458 each month, including private schooling.

Father assigns error to including the cost of schooling in his child support obligation. He argues that the basic

support as provided by the guidelines in OAR 137-50-320 *et seq*, is sufficient to provide for educational needs of the child in the absence of a showing that the actual needs of the child require additional support. *Wiebe and Wiebe*, 113 Or App 535, 833 P2d 333 (1992) (citing Oregon Child Support Guidelines Commentary to OAR 137-50-440 (1991)). He contends that here there was no showing that the child had any special needs that require private schooling. Therefore, he argues, the court exceeded the authority given to it by statute and rule when it deviated from the support guidelines without a finding that such deviation was necessary for the child. OAR 137-50-330(2)(G). *See Seever and Seever*, 124 Or App 54, 57, 861 P2d 1038 (1993) ("The trial court's authority regarding the dissolution of marriage and the relief that it can award are circumscribed by statute and administrative rules promulgated pursuant to statute.").

To deviate from the guidelines requires a finding that it would be unjust or inappropriate to apply the presumptively correct obligation. ORS 25.280. Our *de novo* review does not persuade us here that failure to provide for private schooling would be either unjust or inappropriate.

It is difficult to tell from the court's findings whether the court deviated from the guidelines because it perceived that father had not been paying his "fair share" or whether the court concluded that the parties had agreed that their daughter should always go to private school. The former finding would not support a deviation, and the evidence does not show that father agreed to private schooling for an indefinite period. Father testified that he "went along" when mother wanted daughter in private school. However, there was no evidence that father agreed that daughter should always be in private school and, indeed, mother did not so argue. Although mother does not appear on appeal, in her trial memorandum she contended that the parties had "agreed to place the child in private school" and, in reliance on that agreement, she had signed a contract obligating her to pay tuition for the 1994-95 school year. She argued that, at a minimum, father should be required to pay his proportional share for that year and that the agreement should justify a deviation "when the child could be adversely affected by a change of schooling mid-year."

■    We find that it would be unjust for father not to contribute a proportional share for the 1994-95 school year to which he agreed. However, father does not now agree that private schooling should continue, and there was no showing made that the child has educational needs beyond those captured in the presumptive obligation under the guidelines.

■    Mother testified that private school was "necessary" because of the "religious aspect" and because she had "cut a couple [of] articles out of the newspaper regarding public schools, and there is a lot of violence in public schools, a lot of costs of the programs." Class size, safety, and religious training are legitimate concerns, but they were not related here to the child's needs. The only "need" mother identified was that the child "has a tendency to turn letters around," but there was no evidence that that need could only be addressed through the private school. We conclude that, following the 1994-95 school year, the basic support provided by the guidelines is sufficient to provide for the educational needs of the child.

Reversed and remanded for recalculation of support obligation to include costs of private schooling until the close of the 1994-95 school year and without costs of private schooling thereafter. No costs to either party.