***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted July 26, affirmed September 21, 2022

In the Matter of C. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. L. S.,
*Appellant.*

Baker County Circuit Court
21JU03067; A177877 (Control)

In the Matter of H. L. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. L. S.,
*Appellant.*

Baker County Circuit Court
21JU03068; A177878

In the Matter of S. J. G. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. L. S.,
*Appellant.*

Baker County Circuit Court
21JU03069; A177879

Matthew B. Shirtcliff, Judge.

Sean Connor, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JAMES, P. J.

Affirmed.

**JAMES, P. J.**

In this juvenile dependency case, mother appeals three disposition judgments—one for each of her three children—in which, among other things, the court ordered her to engage in a psychological evaluation and sign releases of information. She contends that the court erred in ordering those things under the standard set out in *Dept. of Human Services v. W. C. T.*, 314 Or App 743, 745, 501 P3d 44 (2021). Alternatively, she contends that *W. C. T.* was wrongly decided, and she asks us to overrule it. We reject without further discussion her challenge to the order to engage in a psychological evaluation, because we conclude that the evidence satisfied the standard set out in *W. C. T.* Additionally, we decline her request to overrule *W. C. T.*, either in respect to its holding as to psychological evaluations, or its discussion of releases of information.

As to the order to sign releases of information, we first conclude that mother's challenge to that order has not been made moot by her compliance with it. On the merits, we conclude that the limited argument that mother raises on appeal regarding the order to sign releases of information is insufficient to distinguish this case from *W. C. T.*, in which we indicated that, absent a developed argument to the contrary, we will assume that a court has authority to order a parent to sign releases of information. Accordingly, we affirm.

We begin by considering whether the issue raised in mother's second assignment of error, regarding the order to sign releases of information, is moot. The Department of Human Services (DHS) filed a notice of probable mootness in which it asserted that that assignment is moot because, after the court ordered her to do so, mother signed some releases of information. DHS argues that, by signing releases under court order, mother "waived any future challenges to the releases or information shared as a result of the releases."

We disagree. As to the releases that mother has signed—which she signed after the entry of the disposition judgment, in which the court ordered her to "sign releases of information"—mother's compliance with a court order did

not waive anything. For its contrary proposition, DHS relies on *W. C. T.*, in which we held that a mother had waived her challenge to an order to sign releases where the mother had signed the releases "after [the child's] removal and before the jurisdictional hearing." 314 Or App at 779. Because the mother had signed the releases *before* the court ordered her to do so, we concluded that she had "already knowingly and intentionally waived objection to the releases DHS sought. *See State v. Hunter*, 316 Or 192, 201, 850 P2d 366 (1993) (waiver is the intentional relinquishment of a known right, for which there is no particular formula)." *Id.*

By contrast, here, mother signed the releases after the court entered a judgment ordering her to do so. That act was not an intentional relinquishment of her right to keep her medical information private; it was compelled by court order, enforceable by contempt.[1] Consequently, it did not waive her right to object on appeal to being ordered to sign the releases or waive any future challenge to the use of the disclosed information. *See, e.g.*, *Hunter*, 316 Or at 201 (waiver is the intentional relinquishment of a known right); *Niman and Niman*, 206 Or App 259, 277, 136 P3d 105 (2006) (trial court did not err in holding husband in contempt for failure to comply with obligations under the dissolution judgment while it was on appeal because "husband could have performed his obligations under protest, that is, involuntarily, without waiving his appeal rights"); *cf., e.g.*, *State v. Jordan*, 308 Or App 547, 552, 481 P3d 1017 (2022) (in the context of waiver of constitutional rights, the test for voluntariness of consent is "whether, under the totality of the circumstances, the consent was given by an act of a defendant's free will as opposed to resulting from express or implied coercion"; voluntary consent is contrasted with "mere acquiescence" (internal quotation marks omitted)).

Furthermore, as mother points out, it is far from clear that the releases that mother has already signed are

---

[1] We note that, coupled with an order to submit to a psychological evaluation, an order to sign releases of information is arguably as invasive of a person's privacy as a compelled blood draw; it gives the state access to the contents and state of a person's mind against the person's will. *Cf. State v. Portulano*, 320 Or App 335, 345, 514 P3d 93 (2022) ("'Such an invasion of bodily integrity implicates an individual's most personal and deep-rooted expectations of privacy.'" (Quoting *Missouri v. McNeely*, 569 US 141, 148, 133 S Ct 1552, 185 L Ed 2d 696 (2013).)).

the only releases that the court ordered her to sign. The court ordered mother to "sign releases of information," but nothing in the judgment or the record reflects that the court imposed any limit on the releases that mother must sign. Rather, it appears that the court contemplated that, after the court entered the judgment, DHS, not the court, would determine what releases mother must sign. Given that, we agree with mother that her obligation to sign releases of information, imposed in the judgment, may well continue into the future—depending on how DHS decides to implement a vague order. Consequently, mother's challenge to the order that she sign releases of information is not moot.

Thus, we turn to the merits of mother's contention that the court erred in ordering her to sign releases of information. Mother combines her argument on her assignment of error regarding the releases of information with her argument on the assignment regarding the psychological evaluation. She is not well served by doing so. She explains in her brief why, in her view, the evidence does not meet the test articulated in *W. C. T. as to the psychological evaluation*. Then, in conclusion, she states, "for all the same reasons, [DHS] additionally failed to develop a record that would authorize forcing mother to sign releases of information." However, most of the reasoning on which mother relies to challenge the psychological evaluation does not apply in the same way to the releases of information, which are of a distinctly different nature.

We do not foreclose the possibility that a blanket order to sign medical releases—without limitation, as occurred here—might be problematic. But developing a legal argument as to why requiring such disclosures would be unlawful is a task for the litigants, not the court. Mother's argument is insufficiently developed for our review.

Affirmed.