[Decided at PENDLETON July 31, 1897.]

## STATE *ex rel. v.* LAVERY.

(49 Pac. 852.)

1. PRESUMPTION — DECREE.— It will be presumed that a decree followed the allegations and prayer of the complaint on which it was based, when the records are lost.

2. CONTEMPT — VIOLATING INJUNCTION.— One who has been enjoined by a decree from diverting the waters of a creek or its tributaries is guilty of contempt of court when he directs others to divert water from such tributaries, although he believed that the decree was invalid so far as it pertained to these streams.

3. AMENDING AFFIDAVIT OF CONTEMPT — VERIFICATION.— An affidavit being necessary as the basis of proceedings for contempt for acts not committed in the presence of the court (Hill's Ann. Laws, § 653), an

amendment of such affidavit must be accompanied by a verification thereof: *State* v. *Kaiser*, 20 Or. 50, cited.

4. CONTEMPT—KNOWLEDGE BY STRANGER.— A stranger to an injunction, if he has notice or knowledge of its terms, is bound thereby, and may be punished for contempt if he violates its provisions; but the rule is otherwise where the stranger was unaware of the terms of the restraining order.

From Malheur: MORTON D. CLIFFORD, Judge.

This is a special proceeding for the punishment of an alleged contempt, said to have been committed by John Lavery and Daniel Lavery in violating the terms of a certain decree. The material facts are that, a suit having been commenced in the Circuit Court of Malheur County by the relator and others to enjoin the defendant, Daniel Lavery, from diverting the waters of Warm Spring Creek, in said county, issue was joined and testimony taken, from which the court on October 10, 1891, found, in substance, that the plaintiffs were the owners of certain premises through which said creek flowed, and that in 1883 they diverted all the waters thereof, and appropriated the same in irrigating their lands; that in May, 1891, the defendant erected a dam in the channel of said creek, and constructed a ditch therefrom, by means of which he diverted said waters, and deprived plaintiffs of the use thereof, to their damage in the sum of $25. As a conclusion of law the court also found that plaintiffs were entitled to a decree perpetually enjoining the defendant from interfering with the waters of said creek, and thereupon decreed "that defendant, Daniel Lavery, his agents, servants and employees, and all persons claiming by, through, or under him, be, and they are

hereby, perpetually restrained and enjoined from in any manner interfering with the waters of said creek, or the tributaries thereof, above the lands of plaintiff." The relator, in November, 1896, filed in said court his affidavit wherein he charges the defendants with violating the provisions of said decree by appropriating to their own use during the months of April, May, June, and July, 1896, a portion of the waters of Warm Spring and Jerry Creeks, and all the waters of Bendier Creek,—the two latter being tributaries of Warm Spring Creek, situate above the head of affiant's ditch, and an attachment was issued thereon, in pursuance of which the defendants were apprehended. Upon being brought before the court, they entered pleas of not guilty, whereupon a trial was had, resulting in their conviction, and, being sentenced to pay a fine of $25 each, they appeal from the judgment thus rendered.

MODIFIED.

For appellants there was a brief and an oral argument by *Mr. Charles H. Finn.*

For respondent there was a brief over the names of *King & Saxton,* and *Charles H. Parrish,* district attorney, with an oral argument by *Mr. Will H. King.*

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

It is contended that the issues upon which the decree is predicated involved the right to appropriate the waters of Warm Spring Creek only, that the right to

apply the waters of its tributaries to a beneficial pur-
pose was not litigated, and that the decree, in so far as
it pretends to restrain the defendants from appropri-
ating any of the waters of Jerry or Bendier Creeks, is
void, and hence they are not in contempt, as charged
by the relator. Disobedience of any lawful judgment,
decree, order, or process of the court is deemed to be a
contempt of the authority of the court: Hill's Ann.
Laws, § 650, subd. 5. Under this statutory definition,
it is apparent that two important questions are pre-
sented for consideration: Is the decree rendered by
the Circuit Court of Malheur County lawful? And, if
so, have the defendants knowingly violated its provis-
ions? The original complaint made no mention of
any of the tributaries of Warm Spring Creek, and the
amended complaint was lost prior to the trial of this
proceeding. While it is a principle of law that a prior
appropriation of the waters of a stream flowing
through public lands of the United States embraces,
when necessary to supply the demands of such appro-
priator, all the waters of springs and tributaries above
the ditch by which the stream is supplied (*Low* v.
*Schaffer*, 24 Or. 239, 33 Pac. 678), yet it must be con-
ceded that an appropriation from a tributary may be
prior in time, and hence superior in right, to an ap-
propriation from the main stream, so that an adjudi-
cation that a proprietor has no right to appropriate
the waters of the main stream does not necessarily
determine that he has no right to any of the waters of
the tributaries thereof.

1. The court having enjoined the defendant,
Daniel Lavery, from diverting the waters of any of

the tributaries of Warm Spring Creek above plaintiff's premises, and the amended complaint upon which the decree is based having been lost, the question is presented whether it will be presumed from a mere inspection of the decree, when uncontradicted by the pleadings, that it was warranted by the allegations and prayer of the bill. It does not follow from the absence of a denial in the answer that plaintiffs had made a prior appropriation of the waters of Bendier and Jerry Creeks, that the amended complaint did not contain averments to that effect; for it may be that the defendant, being unable to controvert such an allegation, for that reason failed to deny it, thereby admitting its truth: Hill's Ann. Laws, § 94. A decree in a suit before a court of this state having jurisdiction to pronounce the same is conclusive between the parties and their representatives and successors in interest by title subsequent to the commencement of the suit: Hill's Ann. Laws, § 733.    Mr. Justice WOODS, in *United States* v. *Debs*, 64 Fed. 724, in discussing the liability of a party to an injunction for violating its provisions, says: "If the injunction was for any reason totally invalid, no violation or disregard of it could constitute a punishable contempt; but if the court acquired jurisdiction, and did not exceed its powers in the particular case; no irregularity or error in the procedure or in the order itself could justify disobedience of the writ." See, also, *In re Cohen*, 5 Cal. 494; *Moat* v. *Holbein*, 2 Edw. Ch. 188; *Sullivan* v. *Judah*, 4 Paige, 444; *People* v. *Bergen*, 53 N. Y. 404; *Stimpson* v. *Putnam*, 41 Vt. 238.    The court

having jurisdiction of the subject-matter and of the person of the defendants in the case at bar, it was authorized to pronounce the decree; and, no appeal therefrom having been taken, it must be presumed, as against Daniel Lavery, in the absence of the amended complaint, that the decree followed the allegations and prayer thereof: *Treat* v. *Maxwell*, 82 Me. 76 (19 Atl. 98).

2.  In *Neale* v. *Osborne*, 15 How. Prac. 81, having become the owner of a store building under lease to plaintiff, the defendant commenced to tear it down, whereupon an injunction was issued restraining the demolition, after the service of which the defendant's partner, one Bissell, with the knowledge and consent of its owner, continued the destruction of the building. The defendant, having been attached for contempt, sought to avoid liability by showing that, notwithstanding he was daily present and saw the work of removal as it progressed, hired some of the hands, and confessedly paid half of the expense, had his teams at the scene of demolition removing the material, half of which belonged to him, he was merely passive, while his partner, who was not a party to the injunction, violated its terms. The court, reviewing these facts, say: "It is the veriest of trifling to say, under these circumstances, that Bissell did the wrong, and the defendant is not responsible. He was present, aiding, abetting, advising, assisting, and directing. The work was not done by Bissell without his active concurrence and participation. It may be, if the defendant had been away, and was in no way privy to the work of tearing down the building, that he might not be responsible in this proceeding for the acts of

Bissell. But to allow the defendant to escape responsibility in this case by throwing the blame upon Bissell, and making him the scapegrace for violating this injunction, would be to connive, on the part of the court, at a most palpable disregard of its process,—at the complete and perfect evasion of an injunction deliberately granted." See, also, *Wheeler* v. *Gilsey*, 35 How. Prac. 139; *Stimson* v. *Putnam*, 41 Vt. 238; *Poertner* v. *Russel*, 33 Wis. 193; *Blood* v. *Martin*, 21 Ga. 127. A proceeding for the punishment of contempt is *quasi* criminal in character (4 Ency. Pl. & Prac. p. 766, and notes); and, such being the case, a plea of not guilty must necessarily put in issue all the material allegations of the affidavit charging the offense complained of; and a finding by the court that the defendant is either guilty or not guilty must be responsive to, and a finding upon, all the issues made by the pleadings. In this case, the court having found Daniel Lavery guilty, the judgment must be affirmed, if there be any evidence tending to support the finding. An examination of the record shows that he leased his farm to his mother, and that his brother John managed the property for her; and it also tends to show that Daniel directed John as to the manner of irrigating it; that a small tract had been sublet to one Frank Burrell, who, desiring to irrigate the same, applied to Daniel for the use of water for the purpose, and the latter directed his brother John to haul material and build a dam in Warm Spring Creek, which was done, and the water thereupon diverted from that stream. Daniel was a party to and bound by the final decree perpetually enjoining him from diverting the waters of Warm

Spring Creek and the tributaries thereof above the head of relator's ditch, of which decree and its terms he had actual knowledge, but claims to have been informed that, in so far as it purported to adjudicate the right to the use of the waters of Jerry or Bendier Creek, it was invalid, because not embraced within the issues made by the pleadings. Without attempting in any manner to obtain a correction or modification of the decree, he seeks to avoid its provisions by this circuitous method, apparently adopted for that particular purpose; but, his brother John and the tenant being in fact his agents, the maxim, "*Qui facit per alium facit per se*," should be invoked, thereby rendering him guilty of the contempt as found by the court.

3.    It is contended that the court erred in permitting, over the defendants' objection and exception, the relator's affidavit to be amended by adding thereto the following words, to wit: "And during all the time of the commission of the acts aforesaid said John Lavery was acting under the instructions and in the employ of the said Daniel Lavery,"—which amendment was not sworn to. Unless the contempt is committed in *facie curiæ*, before any proceedings can be taken therein the facts constituting the contempt must be shown by affidavit presented to the court: Hill's Ann. Laws, § 653. In *State* v. *Kaiser*, 20 Or. 50 (8 L. R. A. 767, 23 Pac. 961), THAYER, C. J., in commenting upon this section of the statute, says: "In proceedings to punish that class of contempts, it is necessary that a proper information should be filed before the court is authorized to act in the matter. Section 653

of the Code, above set out, makes it imperative that the facts constituting the contempt in such cases must be shown by an affidavit presented to the court, etc., before the proceeding can be taken." It is evident that the court erred in thus allowing the amendment without a verification.

4.  However, if it be conceded that the court possessed the power to add these words, they are not sufficient to charge John Lavery, who was not a party to nor bound by the decree, with violating its provisions, without alleging that he had knowledge of its terms and conditions. Rapalje on Contempt, par. 20, and cases cited; 4 Enc. Pl. and Prac., p. 778, subd. 4, and notes. It is true, the decree restrains the "defendant Daniel Lavery, his agents, attorneys, and employees, and all persons acting under, by, or through him," etc., but without serving a copy thereof upon the defendant John Lavery, or alleging or proving that he had knowledge of its provisions, he cannot be in contempt for violating its terms. While there is some conflict of authority upon the question of the liability of a person for violating the process of a court, the weight and better reason seem to support the rule that a stranger to an injunction, who has notice or knowledge of its terms, is bound thereby, and may be punished for contempt for violating its provisions. Rapalje on Contempt, par. 47; *Ewing v. Johnson,* 34 How. Prac. 202; *Waffle* v. *Vanderheyden,* 8 Paige, 45; *United States* v. *Debs,* 64 Fed. 724. It follows that the judgment rendered against the defendant Daniel Lavery is affirmed, but in so far as it applies to the defendant John Lavery it is reversed,

and the cause remanded to the lower court, with directions to discharge the latter.

MODIFIED.