Argued and submitted April 7, 2003, affirmed August 25, 2004

POLYGON NORTHWEST COMPANY,
a Washington general partnership,
*Respondent,*

*v.*

NSP DEVELOPMENT, INC.,
an Oregon corporation,
*Appellant,*

*and*

SHERWOOD H. D., LLC,
and Anthony Paul Brenneke,
*Appellants.*

NSP DEVELOPMENT, INC.,
an Oregon corporation,
*Counterclaim Plaintiff,*

*v.*

POLYGON NORTHWEST COMPANY,
a Washington general partnership,
*Counterclaim Defendant.*

98-11-07897; A114485

96 P3d 837

662

Michael D. Hoffman argued the cause for appellant Sherwood H. D., LLC. On the briefs were Marjorie A. Speirs, Janet M. Schroer, and Hoffman, Hart & Wagner, LLP.

Gary E. Rhoades argued the cause and filed the briefs for appellant Anthony Paul Brenneke.

Warren F. Wadsworth and Bittner & Hahs, P.C., filed the briefs for appellant NSP Development, Inc.

Sarah J. Ryan argued the cause for respondent. With her on the briefs were Mitchell C. Baker and Ball Janik LLP.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendants NSP Development, Inc. (NSP), Sherwood H.D., LLC (Sherwood), and Anthony Paul Brenneke appeal from a contempt judgment.[1] The court based its judgment on a finding that defendants had violated a court order that required NSP and others to apply funds received from the sale of a parcel of real property to a money judgment that Polygon Northwest Company (Polygon) had against NSP. We affirm.

The contempt proceeding arose after NSP failed to pay a judgment of approximately $330,000 that it owed to Polygon. Polygon had obtained the judgment in an action that sought the return of a refundable earnest money deposit. Pursuant to the judgment, the trial court issued an order in January 2000 that required Brenneke, NSP's president and sole shareholder, to appear for a judgment-debtor examination and that restrained NSP from transferring any assets. At the judgment-debtor examination, Brenneke testified that NSP had no assets with which to pay Polygon's judgment. Polygon later learned that NSP held an option to purchase real property in Sherwood, Oregon, and had entered into a contract to sell the property to Home Depot USA, Inc. On Polygon's motion, the trial court entered an order on May 19, 2000, that required NSP and any party acting in concert with it to apply to Polygon's judgment any interest or proceeds that they received from the sale of the property. The order stated:

> "IT IS HEREBY ORDERED that NSP Development, Inc., and/or any entity or person acting in concert with NSP Development, Inc., is required to apply any interest in the Spada-Option Agreement, the contingent interest in the property subject to the Option Agreement, and any interest in the Home Depot USA, Inc. Real Estate Purchase and Sale Agreement or any proceeds therein to satisfaction of the judgement owed to [Polygon]."

The order was served on NSP and its attorney, Simon. At that time, Simon represented NSP, Sherwood, and

[1] *NSP filed a bankruptcy petition in November 2003 that stayed our decision in this case. The bankruptcy court lifted the stay on August 10, 2004.*

Brenneke. The service on NSP was made by serving a copy of the order on Brenneke, who was NSP's registered agent. Simon appeared before the trial court on June 8, 2000, and moved on Sherwood's behalf to delete from the order the language that referred to those acting in concert with NSP and to the proceeds of the Home Depot sale. Sherwood was a company owned and controlled by Brenneke, and, at the time that the court entered the May 2000 order on the Home Depot sale, it was the entity that had a contract to sell the property to Home Depot. The court denied Sherwood's motion but suggested that a hearing could be held to determine whether the order applied to Sherwood if Sherwood was uncertain about that. None of the defendants requested such a hearing.

The sale of the property to Home Depot closed on August 22, 2000. Sherwood received over $1.4 million from the sale. None of that money was applied to Polygon's judgment. Instead, the proceeds were distributed to Brenneke and other companies controlled by him. Polygon then filed a motion for an order requiring NSP, Sherwood, and Brenneke to show cause why they should not be held in contempt for violating the May 2000 order. The order was served on all defendants. After a hearing, the court found defendants in contempt for violating the May 2000 order. It entered a judgment that awarded Polygon its attorney fees for the contempt proceeding and a $50,000 penalty against NSP and Sherwood for the contempt.

In an appeal from a contempt judgment, a contemnor may not attack the underlying order that he or she violated unless the contemnor had no meaningful opportunity to obtain review of the order before violating it. *State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977); *see also State v. Crenshaw*, 307 Or 160, 168, 764 P2d 1372 (1988). That limitation applies because "[t]he integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review." *State ex rel Mix*, 277 Or at 200. The limitation does not apply, however, to a challenge to the court's jurisdiction to enter the underlying order; such a challenge can be raised on appeal from a contempt judgment. *See, e.g., Crenshaw*, 307 Or at 165-66.

■        Defendants frame their argument about the trial court's authority to enter the May 2000 order as an issue of subject matter jurisdiction. They contend that no statute authorized the court to enter the order, so the court lacked subject matter jurisdiction to enter it. Defendants are wrong.

■■        An order or judgment entered by a court that lacks subject matter jurisdiction is void and not merely voidable. Because it is void, it can be collaterally attacked. While defendants seek to rely on that principle, they never explain how the court lacked *subject matter* jurisdiction to enter the May 2000 order. Instead, they cite as support for their position cases involving judgments that were void for reasons other than a lack of subject matter jurisdiction.

For example, they cite a series of cases that have held that court orders that grant temporary restraining orders or injunctions without statutorily required undertakings are void. *State ex rel v. La Follette*, 100 Or 1, 196 P 412 (1921), is exemplary. It involved a contempt proceeding against a defendant for failure to comply with an injunction that was entered without an undertaking. The court recognized that the trial court had subject matter jurisdiction to enter the injunction, but it held that an undertaking was an indispensable requirement that had to be met in order for the court to issue an injunction. *Id.* at 9-10.

Defendants also cite *State ex rel Nayberger v. McDonald et al.*, 128 Or 684, 694-96, 274 P 1104 (1929), in which the court held that an order appointing a receiver was void because the information on which the court acted was insufficient to establish a basis to appoint a receiver. Because the order was void, it followed that the court lacked authority to enter it, but, here again, the court had subject matter jurisdiction to enter the order.

Finally, defendants cite *Hood River County v. Stevenson*, 177 Or App 78, 81, 33 P3d 325 (2001), in which we held that the lack of a proper plaintiff constituted a flaw that rendered the judgment in that case void. *Hood River County* is a standing case. It has no bearing on the jurisdictional issue that defendants have raised in this case.

In short, the claimed lack of statutory authority that defendants identify as a jurisdictional defect does not bear on the court's subject matter jurisdiction to enter the May 2000 order. We therefore reject defendants' contention that the court lacked subject matter jurisdiction to enter the order. We also are satisfied that defendants' claim that the court lacked statutory authority to enter the May 2000 order does not involve a requirement that is equivalent to the mandatory requirements that were held in the cited cases to be jurisdictional requirements. Consequently, whatever the merits of the statutory argument that defendants make, it is not a jurisdictional argument that can be raised in this proceeding.

■      Sherwood and Brenneke also contend that they cannot be found in contempt for violating the May 2000 order because they were not parties to the proceeding between Polygon and NSP in which the court entered the order. In their view, to the extent that the May 2000 order purported to control their actions, it is void and subject to challenge by them in this proceeding because the court lacked personal jurisdiction over them when it entered the order.

■      Sherwood and Brenneke cite no case that supports that proposition, and we have found none. It has long been established in Oregon and elsewhere that a nonparty can be subject to a court order. "[A] stranger to an injunction, who has notice or knowledge of its terms, is bound thereby, and may be punished for contempt for violating its provisions." *State ex rel Thompson v. Lavery*, 31 Or 77, 85, 49 P 852 (1897). Sherwood's and Brenneke's jurisdictional argument is contrary to that principle. That is because a stranger to an injunction could violate the injunction and then successfully defend against being found in contempt for violating it by asserting that, because she was not a party in the action that led to the injunction, she was not subject to the injunction.

We can assume for the purpose of this discussion that the trial court lacked personal jurisdiction over Sherwood and Brenneke when it entered the May 2000 order in the action between Polygon and NSP. What we mean by that is that neither defendant was a party to the action at that time. However, when Sherwood and Brenneke were

served with the May 2000 order, the court acquired jurisdiction over them with regard to the order. There are issues that[f]Sherwood and Brenneke could raise at that point, including issues about whether they had a connection to Oregon or the litigation that would give the court authority to exercise personal jurisdiction over them. *See, e.g., Giordano v. Aerolift, Inc.*, 116 Or App 150, 152-53, 840 P2d 748 (1992), *rev den*, 315 Or 442 (1993). They could file a motion for relief from the obligation to comply with the order and, if dissatisfied with the court's decision on that motion, could seek review of that decision. Alternatively, they could violate the order and then defend the contempt action on the merits if they did not have an opportunity to obtain review of the order before they were required to violate it. *See, e.g., Crenshaw*, 307 Or at 168. However, what they could not do is violate the order and then successfully defend their conduct on the ground that they were not parties to the underlying action. As noted above, a contrary conclusion on that issue would run afoul of more than 100 years of settled law on the enforceability of court orders against people who were not parties to the actions that gave rise to the orders.

■ Sherwood and Brenneke next assert that, even if the court had jurisdiction to enter the May 2000 order and to make it applicable to them, they are entitled to challenge the order on its merits on appeal from the contempt judgment. As noted earlier, a contemnor can challenge the merits of an order in a contempt proceeding when the contemnor had no meaningful opportunity to obtain appellate review of the order before violating it. *See, e.g., Crenshaw*, 307 Or at 168 ("[A] challenge to the merits of [an] underlying order may be made in any appeal from an order of contempt where, for constitutional, statutory or practical reasons, no other remedy, either by appeal or mandamus, was available."). Sherwood and Brenneke argue that, because they were not parties in the action between Polygon and NSP in which the court entered the May 2000 order, they could not seek review of the validity of that order by appeal or mandamus. Consequently, in their view, they can now challenge the order on its merits. They are mistaken.

Sherwood and Brenneke were served with a copy of the May 2000 order three months before the Home Depot sale

closed and the proceeds from the sale were distributed. That gave them sufficient time to seek a ruling from the trial court about the validity of the order and its application to them. In fact, Sherwood asked the trial court in June 2000 to strike the language that made the order applicable to the proceeds of the Home Depot sale and to people or entities who acted in concert with NSP. At that time, the court also invited Sherwood to request a hearing if it had any question about whether the order applied to it.

We need not decide if Sherwood and Brenneke could have obtained review of the May 2000 order if they were unable to seek relief from the order before violating it. That is because they had the ability to seek relief from the order from the trial court *before* violating the order, as Sherwood in fact did, and they could have obtained appellate review of any trial court decision denying them the requested relief. An order denying relief from the May 2000 order would have been appealable as an order entered after a judgment that affected a substantial right. ORS 19.205(2)(c) (2001).[2] As parties who sought relief from the May 2000 order, they would be parties to the order that denied them relief who could appeal from that order. ORS 19.245(1). They also would be parties who could seek review of the order by mandamus. *See* ORS 34.105(4); ORS 34.130(1). Here, because Sherwood and Brenneke are parties who could have obtained review of the May 2000 order before violating it, they cannot challenge the order on its merits on appeal.[3]

■ Defendants make several arguments about the trial court's findings in the contempt proceeding. Before addressing those arguments, we need to determine our standard of review of the findings. We have frequently said that we review contempt findings for substantial evidence. *See, e.g., Patchett and Patchett*, 156 Or App 69, 72, 964 P2d 1114

---

[2] ORS 19.205 was amended in 2003. Or Laws 2003, ch 576, § 85. Those amendments apply only to the appeal of judgments entered on or after January 1, 2004. Or Laws 2003, ch 576, § 90a. Thus, we cite to the 2001 version of ORS 19.205.

[3] The only issue raised by Sherwood and Brenneke about their ability to obtain appellate review of the May 2000 order concerned whether they could obtain review of the order despite not being parties in the Polygon/NSP action at the time that the court entered the order. Consequently, that is the only issue that we address.

(1998). That statement of our standard of review can be traced to *State ex rel Jiminez and Jiminez,* 55 Or App 221, 223, 637 P2d 928, *rev den,* 292 Or 568 (1982). However, a contempt proceeding is legal in nature. *See, e.g., id.* Because it is, we review the trial court's findings under the same standard that applies to our review of jury verdicts, which is a review for any evidence to support the findings. *See, e.g.,* Or Const, Art VII (Amended), § 3; ORCP 62 F. To the extent that some of our prior contempt cases stated a different standard of review, they are disavowed. We turn to the factual issues raised by defendants on appeal.

■    Defendants first contend that there is no evidence to support a finding that they received notice of the May 2000 order. We disagree. The order was served on Brenneke and on Simon, who was at that time acting as attorney for NSP, Sherwood, and Brenneke. Simon appeared on Sherwood's behalf in June 2000 to challenge the order. That evidence is more than sufficient to support a finding that defendants knew of the May 2000 order.

■ ■ They next contend that there is no evidence to support a finding that they wilfully violated the order. "A contempt judgment must be supported by specific findings, including a finding that the violation of the court's order was 'willful.' For these purposes, a willful act is one undertaken with bad intent." *Patchett,* 156 Or App at 72 (citations omitted).

Evidence in the record indicates that Brenneke, who was solely responsible for the actions of both NSP and Sherwood, acted with bad intent. Contrary to Sherwood's and Brenneke's assertion that they did not know that the order applied to them, Sherwood moved to strike the specific language that made the order applicable to it. The record also indicates that Brenneke, personally and on behalf of NSP and Sherwood, engaged in a pattern of conduct designed to prevent Polygon from collecting its judgment. Brenneke changed title companies for the Home Depot sale after the first title company, which had been served with the order, refused to close the sale while the order was in effect. Brenneke directed the first title company not to disclose to the second title company the reason for his decision to shift

companies. He also sought to convince Home Depot to close the sale with an entity other than Sherwood, and he distributed funds from Sherwood's account in an attempt to avoid his and Sherwood's responsibilities under the order. Although Sherwood's account contained over $1.4 million after the sale closed in late August, by the date of the November hearing, Brenneke had transferred virtually all of that money to himself and other companies that he controlled. We reject defendants' other factual arguments without discussion.

In summary, defendants have failed to establish that the court lacked jurisdiction to enter the May 2000 order. Defendants had an opportunity to seek review of the order on its merits before they violated it and therefore cannot challenge the merits of the order on appeal. Evidence supports the trial court's findings and those findings support the contempt judgment. We therefore affirm the contempt judgment against defendants.

Affirmed.