Argued and submitted April 16, supplemental judgment on contempt reversed and remanded; supplemental judgment for attorney fees vacated December 9, 2009

In the Matter of the Marriage of

Norma Lou KELLER,
*Petitioner-Respondent,*
*and*

William F. HOLDNER,
Executor of the Estate of Roy Keller,
*Respondent-Appellant.*

Multnomah County Circuit Court
010767419; A135050

222 P3d 1111

Margaret H. Leek Leiberan argued the cause for appellant. With her on the briefs was Jensen & Leiberan.

David W. Owens argued the cause for respondent. With him on the brief was David W. Owens P.C. & Associates.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

Edmonds, P. J., concurring.

## WOLLHEIM, J.

This appeal arises from a contempt proceeding initiated by appellant, William Holdner, against respondent on appeal, Norma Keller. Holdner is the personal representative of the estate of Roy Keller, Norma's deceased former husband.[1] In 2001, Norma and Roy dissolved their marriage, and a stipulated judgment of dissolution awarded certain insurance policies to Roy. When Roy died in June 2006, Holdner discovered that Norma was still listed as one of the beneficiaries on those policies, and he requested that she sign a declaration disclaiming her interest in the insurance proceeds. When Norma refused to disclaim her interest, Holdner initiated this contempt proceeding in the dissolution matter against her for disobeying the terms of the dissolution judgment, one of which required both parties to "execute and deliver to the other party any and all documents necessary to effectuate the terms of this judgment."

After taking evidence at a contempt hearing, the trial court declined to find Norma in contempt. The court entered a supplemental judgment that contained five "Findings of Fact" and concluded, "[Norma] is not in contempt of court for failing to sign a disclaimer renouncing her right as a beneficiary to receive the proceeds of any life insurance policy on decedent, Roy Keller's life, in which she is named as a beneficiary." Holdner appeals that supplemental judgment, advancing six assignments of error directed at the "Findings of Fact" and the court's ultimate conclusion that Norma was not in contempt. We reverse and remand.

Before describing the relevant facts, we must consider our standard of review. Holdner's assignments of error involve questions of both law and fact. Holdner submits that, as to the factual questions, our standard of review is *de novo*, "because it is governed by the general standard of review for dissolution cases. ORS 19.415[.]" That is, he invites this court to weigh the evidence and find the facts anew in his favor.

This, however, is a contempt proceeding, which carries with it a different standard of review. ORS 33.055(11) provides, "In any proceeding for imposition of a remedial

---

[1] For readability, we refer to Norma Keller and Roy Keller by their first names.

sanction other than confinement, proof of contempt shall be by clear and convincing evidence." *See State v. Burleson*, 342 Or 697, 703, 160 P3d 624 (2007) (noting that "matters of remedial contempt, when the sanction does not include confinement, require[ ] a review of the facts for clear and convincing evidence"). On appeal, however, we do not reweigh the evidence to determine anew whether there is clear and convincing evidence of contempt. *Gritzbaugh Main Street Prop. v. Greyhound Lines*, 205 Or App 640, 648, 135 P3d 345, *adh'd to on recons*, 207 Or App 628, 142 P3d 514 (2006), *rev den*, 342 Or 299 (2007). Rather, "a contempt proceeding is legal in nature." *Polygon Northwest v. NSP Development, Inc.*, 194 Or App 661, 670, 96 P3d 837 (2004). Accordingly, "we review the trial court's findings under the same standard that applies to our review of jury verdicts, which is a review for any evidence to support the findings. *See, e.g.*, Or Const, Art VII (Amended), § 3."[2] *Id.* That is the case even if the contempt proceeding arises out of a dissolution judgment. *Niman and Niman*, 206 Or App 259, 278, 136 P3d 105 (2006) ("Our review is for 'any evidence' to support the trial court's finding that husband acted willfully [in failing to perform obligations under the dissolution judgment].")). *Cf. State ex rel Maubach v. Sarangi*, 223 Or App 421, 425, 196 P3d 26 (2008) (applying the "any evidence" standard in the context of contempt proceedings regarding parenting time orders).

With that standard of review in mind, we turn to the relevant facts. Norma and Roy married in 1977. In 2001, Norma filed a petition to dissolve the marriage. During the course of the dissolution proceedings, her attorney sent a letter to Roy's attorney stating, "I am advised that Mr. Keller has life insurance and would appreciate receiving information regarding number of policies, beneficiaries and their cash value(s)." Roy's counsel responded with a letter that included a "Statement of Estimated Assets" for Norma and Roy. It listed five insurance policies, four of which insured Roy and one of which insured Norma. As to Roy's four policies, the statement further identified "Virginia Keller,"

---

[2] Although this court has, at times, described the standard in terms of "substantial evidence," we disavowed that language in *Polygon Northwest* to the extent that it suggests anything other than the "any evidence" standard under Article VII (Amended), section 3. 194 Or App at 670.

"Jerry," "Vicki," and "Barbara" as beneficiaries. That is, according to the statement, none of Roy's four policies listed Norma as a beneficiary.

The parties subsequently reached a marital settlement agreement and stipulated to the entry of a dissolution judgment. The dissolution judgment awarded Norma's insurance policy to her and awarded the remaining four insurance policies to Roy. The dissolution judgment states:

"5.   Property Awarded to [Roy].

"A.   [Roy] shall be awarded the following property free and clear of any interest of [Norma], subject to any encumbrances thereon which encumbrances [Roy] shall pay, indemnify, and hold [Norma] harmless therefrom.

"(1)   US Bank, Account No. * * *.

"(2)   US Bank, Account No. * * *.

"(3)   Bank of the West, Account No. * * *.

"(4)   Bank of the West, Account No. * * *.

"* * * * *

"G.   Life Insurance.

"(1)   Metropolitan Life Insurance Policy No. * * *.

"(2)   Guardian Life Insurance Policy No. * * *.

"(3)   National Life, Policy No. * * *.

"(4)   National Life, Policy No. * * *."

(Underscore in original.)

Approximately two weeks after the dissolution judgment was entered, Roy executed a new will. He also revoked his power of attorney, which had named Norma his attorney-in-fact, and he revoked his advance directive, which had named Norma as his health care representative. He did not, however, revisit his life insurance beneficiary designations.

Roy died in 2006 and, as it turned out, the "Statement of Estimated Assets" was incorrect with respect to the named beneficiaries on Roy's four insurance policies. In addition to Roy's three children (Jerry, Vicki, and

Barbara), the policies also listed Norma as a primary beneficiary. Upon discovering that Norma was still listed as a beneficiary, Holdner, as personal representative of Roy's estate, requested that Norma sign a declaration that disclaimed any interest that she had in the insurance proceeds. When Norma refused, Holdner filed a motion for an order compelling her to appear and show cause why she should not be held in contempt for disobeying the dissolution judgment. Holdner relied on two provisions of that judgment:

> "2.   Subject to the provision of this judgment, each party *releases and relinquishes any and all claims or rights which he or she may now have, may have had, or may have in the future against the other as a result of the marriage of the parties*, including but not limited to spousal support.

> "3.   <u>Compliance of Judgment</u>. [Norma] and [Roy] are directed to comply with all provisions of the judgment, and *each party shall execute and deliver to the other party any and all documents necessary to effectuate the terms of this judgment*. This Court shall retain jurisdiction over the parties to enforce the provisions of the judgment."

(Emphasis added; underscore in original.)

At the contempt hearing, Norma testified that she "knew [Roy] had put [her] name on some of the policies, but [she] thought he had removed them." She testified that she had never seen the policies themselves, although Roy had "mentioned that he was going to put [her] on the policies with his children." She explained that, when she stipulated to the dissolution judgment, she understood that she was giving up any "ownership" interest in Roy's polices and that Roy was giving up the same interest in her policies. In her view, that meant that she "could either change beneficiaries or leave them as they were on [her] own, and [Roy] was the same."

Meanwhile, Holdner, who was also Roy's longtime accountant, testified that he had prepared the "Statement of Estimated Assets" in 2001—the statement that did not list Norma as one of the beneficiaries on the policies. He further testified that he had prepared that statement based on the policies that he had in his office and that, in his view, "maybe [Roy] wasn't coherent enough to or have the knowledge to

convey that [he had added Norma as a beneficiary] to us, whatever the reason."

At the close of the contempt hearing, Holdner advanced a number of arguments as to why Norma was not a proper beneficiary of the insurance policies: (1) Norma failed to disclose to Roy that she was a beneficiary on his life insurance policies or tell him to change the beneficiary; (2) under paragraph 2 of the dissolution judgment, Norma relinquished any claim that she had to the proceeds, which were "as a result of the marriage"; and (3) under paragraph 5 of the dissolution judgment, the fact that Roy was given the insurance policies "free and clear" of any interest in them operated to extinguish any expectancy interest as a beneficiary. Holdner also argued that the beneficiary designation was simply the result of a mistake. According to Holdner, Roy simply had not realized that Norma was still the beneficiary; "had the decedent [Roy] remembered or known that * * * some 20 years ago that she [Norma] had been named as a beneficiary, the change would undoubtedly have been made."

In response, Norma argued that she could not have given up an expectancy interest in life insurance policies that she did not even know she had—that is, she was told at the time of the dissolution that she was no longer a beneficiary on those policies. In her view, she gave up only an "ownership" interest in the policies, or the right to control who the beneficiary of those policies would be; it was Roy's obligation to change the beneficiary, if that was his desire. And on that point, the evidence, in her view, supported a conclusion that Roy had actually *intended* to leave her as the beneficiary, given that Roy had changed his will and his advance directive but did not change the beneficiary designations on the insurance policies.

Both parties relied heavily on this court's decision in *Prudential Ins. v. Weatherford,* 49 Or App 835, 841, 621 P2d 83 (1980), in which we held that the former spouse's "interest in the [life insurance] policy was not a property interest, but a mere expectancy, and it was not specifically dealt with by the terms of the property settlement agreement." In Holdner's view, *Prudential Ins.* involved a policy that was not mentioned in the dissolution judgment, which was critical to

the court's analysis. Norma, on the other hand, took the position that, under *Prudential Ins.*, an "expectancy" interest is not lost by way of a dissolution agreement "unless it's specifically given away."

The trial court agreed with Norma. In an order, and later a supplemental judgment, the court explained the basis of its ruling:

"1.   The case of [*Prudential Ins.*] provides clear authority for finding in favor of [Norma].

"2.   A beneficiary designation in a life insurance policy is not a claim or interest arising from the marital relationship of the parties.

"3.   The Court heard no persuasive evidence regarding the intent of the deceased spouse regarding his life insurance.

"4.   It is quite interesting that decedent, on a timely basis, changed his Will after the Dissolution, revoked the Power of Attorney to his ex-wife and his Advanced Directive, giving her authority regarding his final illness. He did not change the beneficiary designation on the insurance policies.

"5.   Petitioner did not at any time in the dissolution process or since have any duty to tell decedent to change the beneficiary designation on his insurance policies."[3]

This appeal followed.

In his first assignment of error, Holdner takes issue with two of those "Findings of Fact." Those "findings" were made in response to the parties' respective reliance on this court's decision in *Prudential Ins.* At its core, the parties' debate at trial and on appeal has focused on whether the dissolution judgment had the legal effect of terminating Norma's beneficiary interest—described by the trial court and the parties as an "expectancy" interest—in the insurance proceeds. Although styled as factual findings, both of the

---

[3] The Honorable Elizabeth Welch ruled on the motion, but the supplemental judgment memorializing that ruling was signed by the Honorable Thomas M. Ryan.

court's first two "findings" are in fact legal conclusions. Accordingly, we review those conclusions for errors of law.

We begin our analysis with *Prudential Ins.*, a case in which an insurer interpleaded life insurance proceeds to resolve a dispute between the decedent's ex-wife, Weatherford, and the personal representative of the decedent's estate. The circumstances of that case were roughly analogous to those here. During their marriage, Weatherford was the named beneficiary of a group life insurance policy maintained by the decedent's employer. The parties later dissolved their marriage and entered into a property settlement. Six days after the dissolution judgment was entered, the decedent was accidentally killed. At the time of his death, the decedent's life insurance policy still listed Weatherford as the beneficiary.

The personal representative contended that the property settlement had the effect of precluding Weatherford's claim to proceeds under the insurance policy. That agreement provided:

> "This agreement constitutes the full, complete and final property settlement agreement between the parties hereto and each party does hereby release and discharge the other from any and [all] claims and property deman[ds], each against the other, except as expressly provided in this agreement, and except for the grounds of dissolution which either party may have against the other."

49 Or App at 837. The personal representative directed this court to "numerous cases in which the courts of several jurisdictions have held, under facts similar to those before us, that a property settlement agreement precluded a recovery by the named beneficiary." *Id.* at 838. We examined those cases and "determined that *each turns on the degree of specificity of the language employed in the property settlement agreement.*" *Id.* (emphasis added). Accordingly, we then proceeded to analyze the language of the settlement agreement:

> "It is to be observed that the policy of insurance in this case was a term policy, had no cash value and was not expressly disposed of by the property settlement agreement. The agreement provided only that each party released and discharged the other from all claims and property demands. Accordingly, we conclude that evidence of

the parties' intent with respect to the policy of insurance would not be inconsistent with the written agreement so as to vary its terms. *Hatley v. Stafford*, 284 Or 523, 533-34, 588 P2d 603 (1978). *Moreover, while the cases referred to earlier in which the named beneficiary was denied recovery, contain language specifically directed to insurance or disclaimers of expectations, the present settlement agreement does not. Language used in property settlement agreements similar to that used in the present case has been held not to bar the named beneficiary's recovery.*"

*Id.* at 839-40 (emphasis added).

After analyzing a California case, *Grimm v. Grimm*, 26 Cal 2d 173, 157 P2d 841 (1945), we explained that Weatherford's interest was not a "property interest" but rather an "expectancy interest" that was not addressed by the property settlement:

"Here, [Weatherford's] interest in the policy was not a property interest, but a mere expectancy, and it was not specifically dealt with by the terms of the property settlement agreement. By the terms of the policy itself that expectancy was subject to termination by the decedent, without the beneficiary's consent, by filing written notice of change of beneficiary. We conclude that [Weatherford's] claim here as named beneficiary under the policy is not a claim arising from the marital relationship of the parties, nor is it a property demand against the separate property of the decedent. As in *Grimm* and *Mullenax* [v. *National Reserve Life Insurance Co.*, 29 Colo App 418, 485 P2d 137 (1971)], *the policy here was not expressly dealt with in the written settlement agreement and thus could have been awarded to the named beneficiary on that basis.*"

49 Or App at 841 (emphasis added).

■    In our view, *Prudential Ins.* does not, as the trial court determined, "provide[ ] clear authority for finding in favor of [Norma]." As *Prudential Ins.* itself provides, whether a dissolution settlement precludes recovery by a named beneficiary is a case-by-case inquiry that "turns on the degree of specificity of the language employed in the property settlement agreement." *Id.* at 838. Here, unlike in *Prudential Ins.*, the dissolution settlement actually addresses the insurance

policies, and that language (in paragraph 5 of the agreement) must be analyzed to determine whether the parties intended to address Norma's beneficiary interest.

The trial court's related legal conclusion—that "[a] beneficiary designation in a life insurance policy is not a claim or interest arising from the marital relationship of the parties"—overstates our holding in *Prudential Ins.* We concluded that the claim in that case did not arise from the marital relationship of the parties because of the particular language in that property settlement agreement. However, as explained above, the settlement in this case contains different language that must be examined to determine the intent of the parties.

■     In short, the trial court erred in relying on this court's holding in *Prudential Ins.* rather than analyzing the specific language of the dissolution settlement to determine whether Norma and Roy *intended* to terminate Norma's beneficiary interest in Roy's life insurance policies or otherwise bar her future claim to those insurance proceeds. And under these circumstances, we conclude that the best course is to remand for the trial court to consider the parties' intent in the first instance. In analyzing the parties' agreement, and in determining whether it is ambiguous, the trial court may consider the text in light of the circumstances underlying the formation of the contract. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 313, 129 P3d 773, *rev den*, 341 Or 366 (2006). As we have previously observed, "when, after being presented with evidence of the circumstances of contract formation, the trial court concludes that a disputed term is unambiguous, '[t]hat conclusion is pregnant with implicit factual findings,' which we review for any evidence." *Shogun's Gallery, Inc. v. Merrill*, 229 Or App 137, 145, 210 P3d 920 (2009) (quoting *Batzer Construction, Inc.*, 204 Or App at 319). Where the trial court has not addressed the contractual language in the first instance, our review in that respect is hampered.[4] Accordingly, we reverse

_____

[4] We further note that, on appeal, the parties disagree as to whether, given the structure of the marital settlement agreement, the language of the agreement that describes the award to Roy as "free and clear of any interest" of Norma even applies to the life insurance policies. Holdner contends that it does, and that any ambiguity in that regard is attributable to a scrivener's error. That, too, is an issue for the trial court to resolve in the first instance.

and remand the supplemental judgment for the trial court to interpret the marital settlement agreement.[5]

Supplemental judgment on contempt reversed and remanded; supplemental judgment for attorney fees vacated.

**EDMONDS, P. J.,** concurring.

I agree that the trial court erred in not analyzing the specific language of the dissolution settlement agreement to ascertain whether Norma and Roy intended to terminate Norma's beneficiary interest in Roy's insurance policies. I write separately, however, to observe that the personal representative seeks to hold Norma in contempt for disobeying the terms of the dissolution judgment. My understanding of the law of contempt is that he must demonstrate that Norma is in willful disobedience of the judgment in order for the trial court to find her in contempt; in other words, that Norma was aware that she was not entitled to any of the proceeds from the life insurance policies at the time that she entered into the settlement agreement and thereafter attempted to assert her beneficiary interest despite that knowledge. At least on the record before us, the evidence does not appear to satisfy that requirement.

---

[5] Given our remand, we express no opinion regarding Holdner's remaining assignments of error.